Ex. 2

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the
District of New Jersey

| | | |
|---|---|---|
| Sandoz Inc. and RareGen, LLC | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No. 3:19-cv-10170 |
| United Therapeutics Corporation and Smiths Medical ASD, Inc. | ) | |
| *Defendant* | ) | |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To: Accredo Health Group, Inc.

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Exhibit A.

| Place: Alpha Reporting<br>236 Adams Ave, Memphis, TN 38103<br>OR VIA EMAIL TO: jenny.kramer@alston.com | Date and Time:<br>05/14/2020 9:00AM |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
|  |  |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 04/14/2020

*CLERK OF COURT*

OR

_____          /s/ Jenny Kramer
*Signature of Clerk or Deputy Clerk*          *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Sandoz Inc. _____, who issues or requests this subpoena, are:
Jenny Kramer, Alston & Bird, 90 Park Avenue 15th Floor, New York, NY 10016; jenny.kramer@alston.com; 212-210-9400

**Notice to the person who issues or requests this subpoena**
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 3:19-cv-10170

## PROOF OF SERVICE

*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

# Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
 (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
 (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
  (i) is a party or a party's officer; or
  (ii) is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
 (A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
 (B) inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
 (A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
 (B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
  (i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
  (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
 (A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
  (i) fails to allow a reasonable time to comply;
  (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
  (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
  (iv) subjects a person to undue burden.
 (B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
  (i) disclosing a trade secret or other confidential research, development, or commercial information; or
  (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
 (C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
  (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
  (ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
 (A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
 (B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
 (C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
 (D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
 (A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
  (i) expressly make the claim; and
  (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
 (B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

---

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

# EXHIBIT A

## DEFINITIONS

1. "You" or "Your" means Accredo Health Group, Inc. and its employees, agents or other persons acting on any of its behalf, including any employees, agents, or other persons acting on behalf of Accredo Health Group, Inc.

2. "Smiths" means Smiths Medical ASD, Inc., including any employees, agents, or other persons acting on behalf of Smiths.

3. "United Therapeutics" means United Therapeutics Corporation, including any employees, agents, or other persons acting on behalf of United Therapeutics.

4. "Cartridges" means the medical devices containing Treprostinil and inserted in the CADD-MS® 3 Ambulatory Infusion Pump to provide subcutaneous injections of Treprostinil.

5. "CADD-MS® 3 Ambulatory Infusion Pump" means the medical device manufactured by Smiths and used to subcutaneously inject a steady flow of Treprostinil into the patient's body.

6. "Injected Treprostinil" means the drug used to treat Pulmonary Arterial Hypertension that is administered through subcutaneous or intravenous injection, including the brand-name drug Remodulin® produced by United Therapeutics.

7. "Remodulin®" means the brand-name version of Injected Treprostinil produced by United Therapeutics to treat Pulmonary Arterial Hypertension.

# EXHIBIT A

8. "Pulmonary Arterial Hypertension" or "PAH" means the disease that causes high blood pressure in the arteries that run from the heart to the lungs.

9. "Agreements" means written agreements or records of oral agreements.

10. "Communication" or "communications" means any oral, written, or other contact between two or more persons or entities by which any information or knowledge of any nature is transmitted or conveyed or attempted to be transmitted or conveyed, including letters, memoranda, telegrams, telefaxes, telecopies, telexes, emails, text messages, face-to-face meetings, telephone conversations, voicemails, answering machine messages, and telephonic notes.

11. "Document" or "documents" are synonymous in meaning and equal in scope to the usage of the terms as defined by Federal Rule of Civil Procedure 34 and shall be interpreted in their broadest sense to include all "writings" and "recordings," including, without limitation, all writings, drawings, graphs, charts, photographs, recordings, phone records, videos, computer files, electronic mail or information, agreements, facsimiles, telexes, notes, and other data compilations from which information can be obtained, translated, if necessary, through detection devices into reasonably usable form.

12. "ESI" shall mean any "electronically stored information."

13. "Including" shall mean "including without limitation" and "including but not limited to."

# EXHIBIT A

14. "And," "or," and "and/or" shall be construed conjunctively or disjunctively, whichever maximizes the scope of each interrogatory in which they are used.

15. "Any" and "all" shall be construed to mean "any and all."

16. "Each" and "every" shall be construed to mean "each and every."

17. "Person" or "persons" means any individual, group, or entity. The acts of a person shall include the acts of the person's directors, officers, owners, members, employees, agents, attorneys, and all other representatives acting on the person's behalf.

18. "Relating to," "related to," or "relate to," when referring to any given subject matter, means without limitation any information, document, or thing that in whole or in part and directly or indirectly relates to, concerns, regards, discusses, describes, depicts, demonstrates, shows, evidences, supports, refutes, contradicts, summarizes, analyzes, bears upon, comments upon, pertains to, constitutes, comprises, involves, contains, embodies, reflects, alludes to, identifies, states, mentions, refers to, deals with, or is in any way relevant to the particular subject matter identified.

19. All other words are given their plain and ordinary meaning.

# EXHIBIT A

## INSTRUCTIONS

1. You are to produce all requested documents, communications, and ESI which are in Your possession, custody, or control, including, without limitation, all such documents, communications, and ESI in the possession of any of Your agents, employees or attorneys, and any other person under Your control or acting on Your behalf.

2. If You claim any privilege as grounds for not fully answering a Request, or any part thereof, You should provide a privilege log in accordance with Rule 26 of the Federal Rules of Civil Procedure with sufficient information to confirm that the claim of privilege is valid.

3. All Documents produced pursuant to these Requests are to be organized in the manner in which they are kept in the usual course of business. File folders with tabs or labels, or directories of files identifying Documents and/or Communications, must be produced intact with such Documents and/or Communications.

4. If no Documents exist that are responsive to a Request, a written statement to that effect shall be provided at the time of production.

5. The singular form of any word shall include the plural, and the plural shall include the singular.

# EXHIBIT A

6. The terms "and," "or," and "and/or" shall be construed conjunctively or disjunctively as necessary to bring within the scope all responses which might otherwise be construed as outside its scope.

## DOCUMENT REQUESTS

1. Your transaction-level electronically stored sales data relating to Your sales of Injected Treprostinil from January 1, 2015 through the present, including: (i) data sufficient to identify customer type (e.g., individual patient, hospital, payor, etc.); (ii) date of transaction; (iii) invoiced or transferred unit price; (iv) quantity purchased or sold; (v) total amount of the transaction; (vi) any surcharge or discount associated with the transaction, as well as an indication of whether the surcharge or discount is accounted for in the transaction amount; (vii) data sufficient to identify whether the product purchased or sold was generic Injected Treprostinil or Remodulin®; (viii) any information that uniquely identifies each transaction (e.g., invoice number and invoice line number, order number, etc.); and (ix) type of transaction, including but not limited to original sale, rebate, return, credit, debit, surcharge, and discount.

2. Your transaction-level electronically stored sales data relating to Your sales of Adcirca® (tadalafil), Adempas® (riociguat), Flolan® (epoprostenol), Letairis® (ambrisentan), Opsumit® (macitentan), Orenitram® (oral treprostinil), Revatio® (sildenafil), Tracleer® (bosentan), Tyvaso® (inhaled treprostinil), Uptravi®

# EXHIBIT A

(selexipag), Veletri® (epoprostenol), and Ventavis® (iloprost) from January 1, 2015 through the present, including the fields and categories of information described in parts (i) through (ix) of Request No. 1.

3. Documents sufficient to identify the number of patients per month, from January 1, 2015 through the present, to whom You have sold or dispensed Remodulin®, including documents sufficient to identify the number of patients to whom You have sold or dispensed Remodulin® for intravenous administration and those for subcutaneous administration.

4. Documents sufficient to identify the monthly total number of CADD MS® 3 Ambulatory Infusion Pumps and Cartridges You sold, dispensed or rented from January 1, 2015 through the present.

5. Documents sufficient to identify Your total monthly inventory, from January 1, 2015 through the present, of CADD MS® 3 Ambulatory Infusion Pumps and Cartridges available for sale or use with generic Injected Treprostinil.

6. Documents sufficient to identify any medical devices or products that You have sold, dispensed, or used as an alternative to the CADD MS® 3 Ambulatory Infusion Pump for subcutaneous administration of Injected Treprostinil since January 1, 2015.

7. Documents sufficient to understand how You perform maintenance and replace parts on CADD MS® 3 Ambulatory Infusion Pumps owned by You.

6

# EXHIBIT A

8. Documents sufficient to identify the pumps that You have sold, dispensed, or used as a delivery device for injected administration of Flolan®, Veletri®, and generic epoprostenol since January 1, 2015.

9. All documents and communications, from December 1, 2018 through the present, related to Cartridges being placed on "allocation," including (i) any documents relating to the shipment or distribution of Cartridges being withheld, delayed, or limited pending approval of orders by United Therapeutics or Smiths or (ii) any related actual or potential shortages on available Cartridges to be dispensed at pharmacy locations.

10. All documents and communications related to the negotiation and execution of the Distribution Agreement for CADD MS® 3 Ambulatory Infusion Pump, made as of December 1, 2017, between You and United Therapeutics ("Distribution Agreement"), the First Amendment to Distribution Agreement for CADD MS® 3 Ambulatory Infusion Pump, effective April 23, 2019, between You and United Therapeutics ("First Amendment"), and the letter from Smiths concerning Cartridges that You signed on March 18, 2019 ("Letter Agreement"), including any document evidencing a modification of or amendment to the Distribution Agreement, the First Amendment, or the Letter Agreement.

11. All documents and communications, from January 1, 2015 through the present, that relate to restrictions on the sale, dispensation or use of CADD-MS® 3

# EXHIBIT A

Ambulatory Infusion Pumps or Cartridges, including restrictions that prevent either from being sold, dispensed or used to administer any drug.

12. All documents and communications, from January 1, 2015 through the present, that relate to the actual or potential availability or compatibility of CADD-MS® 3 Ambulatory Infusion Pumps, Cartridges, or any other medical product or device (including any alternative to Cartridges for administering Injected Treprostinil through CADD-MS® 3 Ambulatory Infusion Pumps) for use with Remodulin® or generic Injected Treprostinil.

13. Documents and communications related to the actual or potential impact on the sale, distribution, or use of generic Injected Treprostinil for intravenous administration of any restrictions on CADD-MS® 3 Cartridges that were proposed or imposed by United Therapeutics or Smiths from January 1, 2015 through the present.

14. Internal documents and communications, from January 1, 2016 through March 31, 2019, relating to Your discussions and negotiations with Sandoz Inc. or RareGen, LLC that refer to or describe (i) the parties' roles and responsibilities in connection with the sale and dispensation of generic Injected Treprostinil or (ii) pumps, cartridges, or ancillary supplies needed or used by patients in the administration of Injected Treprostinil, including but not limited to agendas, notes,

# EXHIBIT A

or reports from Your August 9, 2017 meeting with Sandoz and Your January 3, 2019 meeting with Sandoz and RareGen.

15. Internal documents and communications, including planning documents, training materials, promotional materials, or any materials prepared for patients, prescribers, or payors related to (i) the transition from dispensing or selling branded Remodulin® product to generic Injected Treprostinil product or (ii) the transition from providing support services for patients receiving branded Remodulin® treatment to patients receiving generic Injected Treprostinil treatment.